**From the Organization of the Court to the June Term, 1893.**

### PRESENT.

Hon. EDWARD B. GREEN, Chief Justice.
Hon. JOHN G. CLARK, }
Hon. ABRAHAM J. SEAY, } Associate Justices.

---

WILLIAM M. ALLISON v. CHARLES A. BERGER, *et al.*

*[Opinion filed June 24, 1890.]*

COUNTY COURTS—*Jurisdiction*—Section 9 of the organic act of Oklahoma Territory declares that the judicial power shall be vested in "a supreme court, district courts, probate courts, and justices of the peace." Section 11, among other things, extends Const. Neb. 6, §§ 15, 16, and Comp. Laws Neb. c. 20. relating to "probate courts" to Oklahoma until after the adjournment of the first session of its legislature, and provides. that the "county courts" and justices of the peace shall have the jurisdiction authorized by that chapter, except that justices' jurisdiction shall not extend to cases involving over $100, and "county courts," shall have jurisdiction in all cases involving more than $100. Const. Neb. art. 6, § 15, provides for the election of county judges, and section sixteen gives them general probate Jurisdiction, "and such other jurisdiction as may be given by general law," but provides that in civil actions. their jurisdiction shall not extend to cases involving more than $1.000.. Comp. Laws Neb. c. 20, § 2, on probate courts, gives the county judges. concurrent jurisdiction with the district courts in all civil cases not involving more than $1,000 exclusive of costs. *Held,* that congress intended to establish "county courts" in Oklahoma with the same probate and civil jurisdiction as the county courts in Nebraska, and therefore a county court has jurisdiction of a civil suit for a money demand of $310.

County No. 1. Application for writ of prohibition.

*Horace Speed,* for applicant.

*H. S. Cunningham, John Foster, T. H. Soward* and *T. A. Sears*, for defendants.

The opinion of the court was delivered by

GREEN, C. J.: This is a petition for a rule on Charles A. Berger, as county judge of the First county of the Territory of Oklahoma, to show cause why a writ of prohibition should not issue against him, as judge of the county court of said county, prohibiting him from taking jurisdiction in a certain suit, pending in said county court, wherein the defendant, W. W. Barbarick, is the plaintiff, and the petitioner, William M. Allison, is the defendant. The defendants waive the service of the rule to show cause, enter their appearance and interpose a demurrer to the petition.

The petition alleges:

"That on the 13th day of June, 1890, one W. W. Barbarick appeared before Charles A. Berger, then claiming to act as a county judge, in said Territory, and filed a complaint against this petitioner, charging that this petitioner is personally indebted to said Barbarick in the sum of to-wit, $310 00, which sum was justly due, and for which sum demand had been made and payment thereof refused, and praying judgment against this petitioner in the sum of, to-wit, $310.00.

"That thereupon said Charles A. Berger issued under his hand, as county judge within the Territory of Oklahoma, a paper purporting to be a writ issued by him as such county judge, in the name of the Territory of Oklahoma, and directed to the sheriff, or any constable of said county, commanding that this petitioner be notified that he had been sued by said Barbarick in the county court for the First county, and that unless this petitioner answer by the 7th day of July, 1890, the petition of said Barbarick, now filed in the office of said court, will be taken as true, and judgment rendered accordingly, and directing that summons be returned on, or before, June 26th, 1890.

"That upon the back of such paper, purporting to be a writ, is the statement in writing, that if this petitioner

fail to appear and answer, judgment will be taken for $310.00, with interest thereon, which said statement is signed by said Charles A. Berger, subscribing himself as county judge.

" Petitioner would further show, that such complaint, writ and proceedings thereon do not arise out of any matter pertaining, or properly belonging to a probate court, but are wholly matters which, if cognizable in any court, are merely founded upon a money demand for indebtedness, and are only cognizable in the district court of this Territory.

" Petitioner therefore asserts, that said Berger has no authority to issue such writ, or paper, as a county judge, and is not, speaking with propriety, a county judge; but is the judge of the probate court within and for the First county of said Territory, having the powers and jurisdiction of a probate court, and not the powers and jurisdiction of a county court.

" This petitioner therefore prays that this court issue a rule, requiring said Charles A. Berger to show cause, if any he can, why the writ of prohibition should not issue from this court, directing that he shall proceed no further in the cause, or matter, hereinbefore stated, and, until such showing is had, this petitioner prays a rule requiring said Berger to proceed no further in such cause or matter; and that, upon the hearing, the court make the rule of prohibition absolute and perpetual."

The petition is duly verified by the affidavit of the petitioner; and the questions arising upon the demurrer have been ably and fully argued, both for and against the awarding of the writ of prohibition; and the jurisdiction of this court to award a writ of prohibition, in a proper case, has not been questioned.

The contention on behalf of the petitioner is, that under the organic act and laws of the Territory of Oklahoma, there is no such court as a county court, and no such officer as a county judge, having jurisdiction in actions at common law ; or having any jurisdiction other than that which properly pertains to, and is exercised by a probate judge and a probate court. And

the whole controversy turns upon the construction to be given to the act of Congress organizing the Territorial government of the Territory of Oklahoma.

The provisions of the fundamental law, which is the constitution of the Territory of Oklahoma, so far as they relate to the county judge and the county court, whose jurisdiction is challenged, may readily be brought together, and are found in sections 9 and 11 of the the organic act, and in those parts of the constitution and laws of the state of Nebraska, which are extended to and put in force in the Territory of Oklahoma.

Section 9 provides:

"That the judicial power of the said Territory shall be vested in a supreme court, district courts, probate courts and justices of the peace. The supreme court shall consist of a chief justice and two associate justices, any two of whom shall constitute a quorum. They shall hold their offices for four years, and until their successors are appointed and qualified, and they shall hold a term annually at the seat of government of said Territory. The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and justices of the peace, shall be as limited by law: *Provided*, That justices of the peace, who shall be elected in such manner as the legislative assembly may provide by law, shall not have jurisdiction of any matter in controversy; when the title and boundaries of land may be in dispute, or when the debt or sum claimed shall exceed one hundred dollars; and the said supreme court and district courts, respectively, shall possess chancery as well as common law jurisdiction. and authority for redress of all wrongs committed against the constitution or laws of the United States, or of the Territory, affecting persons or property."

Section 11 provides:

"That the following chapters and provisions of the compiled laws of the state of Nebraska, in force November 1, 1889, in so far as they are locally applicable, and not in conflict with the laws of the United States, or with this act, are hereby extended to and put in force in the

Territory of Oklahoma, until after the adjournment of the first session of the legislative assembly of said Territory:     *   *   *   *   *   *   *   *   *   Sections 15 and 16 of article 6 of the constitution of said state, and of chapter twenty of said laws, entitled "Courts—Probate."

"The supreme and district courts of said Territory shall have the same power to enforce the laws of the state of Nebraska, hereby extended to and put in force in said territory, as courts of like jurisdiction have in said state; but *county courts* and justices of the peace shall have and exercise the jurisdiction which is authorized by the said laws of Nebraska; *Provided*, That the jurisdiction of justices of the peace in said Territory shall not exceed the sum of one hundred dollars, and *county court*s shall have jurisdiction in all cases when the sum or matter in demand *shall exceed the sum of one hundred dollars*."

Sections 15 and 16 of article 6 of the constitution of the state of Nebraska provide:

"SEC. 15.    There shall be elected in and for each organized county one judge, who shall be judge of the *county court* of such county, and whose term of office shall be two years."

"SEC. 16.    *County courts* shall be courts of record, and shall have original jurisdiction in all matters of probate, settlements of estates of deceased persons, appointments of guardians, and settlement of their accounts, in all matters relating to apprentices, and such other jurisdiction as may be given by general law. But they shall not have jurisdiction in criminal cases in which the punishment may exceed six months' imprisonment, or a fine of over five hundred dollars; nor in actions in which title to real estate is sought to be recovered, or may be drawn in question; nor in actions on mortgages or contracts for the conveyance of real estate; nor in *civil actions* where the debt or sum claimed *shall exceed one thousand dollars*."

Section 2 of chapter 20 of the compiled laws of the state of Nebraska, entitled "Courts—Probate," provides:

"*County judges*, in their respective counties, shall have and exercise the ordinary powers and jurisdiction of a justice of the peace, and shall, in *civil cases*, have concurrent jurisdiction with the district court, in all civil cases, in any sum not exceeding *one thousand dollars*, exclusive of costs, and in actions of replevin where the appraised value of the property does not exceed that sum; and the provisions of the code of civil procedure, relative to justices of the peace, shall, where no specific provision is made by this subdivision, apply to the proceedings in all *civil actions* prosecuted before said *county court*."

It will be readily perceived that in the organic act, and in the parts of the constitution and laws of the state of Nebraska, which are extended to and put in force in the Territory of Oklahoma, the designations, "probate courts" and "county courts," and "county judge" and "probate judge," are used; and in this apparent confusion and indiscriminate use of names, we are required to ascertain, if possible, the *intention* of the law-making power, and such *intention* must control in the construction of these seemingly conflicting provisions.

Such is the well settled and well defined rule of law for the construction of legislative enactments and written constitutions, in all cases of doubt, or uncertainty in the language used; and we are required also to examine all the provisions of the organic act, and the provisions of the constitution and laws of the state of Nebraska, which are extended to, and put in force in the Territory of Oklahoma, and which are *in pari-materia*, and, from a view of the whole, to arrive at the true intention of each part, and of the whole of such parts. (Cooley's Const. Lim., 68–70; Sedgwick on Stat. Construction, 194.)

That Congress did not intend to create two courts, one called a "probate court," and the other a "county court," in each organized county of the Territory of

Oklahoma, having exactly the same jurisdiction in *probate matters*, and the one presided over by a judge called a "probate judge," and the other by a judge called a "county judge," can admit of no doubt, for to do so would be an act of stupidity and imbecility on the part of Congress, and we cannot adopt a construction of the organic act that will lead us to such a conclusion.

But it is clear from a consideration of the organic act, and the provisions of the Constitution and laws of the state of Nebraska, which are extended to, and put in force in the Territory of Oklahoma, that Congress did intend to create a court in each organized county of the Territory, having and exercising the same jurisdiction in probate, civil, and criminal matters that the court, known as the county court, in the state of Nebraska, has and exercises under the constitution and laws of that state; and that the judge of such court should be known as, and styled a county judge.

At the time of the framing and passage of the organic act Congress must have known, and did know, that there was no court in the state of Nebraska constitutionally styled a probate court; for by the first section of article six of the constitution of that state, from which article sections fifteen and sixteen are taken, it is provided that the judicial power of the state shall be vested in a supreme court, district courts, *county courts*, justices of the peace, and in such other courts, inferior to the district courts, as may be created by law for cities and incorporated towns. And as Congress intended to extend a part of the laws of that state to, and put them in force in the Territory of Oklahoma, sections fifteen and sixteen were selected, which provide for a county judge and a county court; so that there might be perfect harmony between the court and the law of the court, until after the adjournment of the first legislative assembly.

This view of the case is sustained by the provision in the last paragraph of section *eleven* of the organic act, that,

"The supreme and district courts of said Territory shall have the same power to enforce the laws of the state of Nebraska, hereby extended to, and put in force in said Territory *as courts of like jurisdiction have in said state.*"

And any other view than that Congress intended to create the office of county judge and a county court in each of the organized counties in the Territory of Oklahoma, renders absolutely nugatory the provisions of sections fifteen and sixteen of article six of the constitution of the state of Nebraska, and they have been extended to and put in force, as a part of the territorial law, for no purpose whatever.

As section *nine* of the organic act, in distributing the judicial power of the Territory of Oklahoma, provides that it shall be vested in a "supreme court, district courts, probate courts, and justices of the peace," it is contended with much earnestness and ability, that there can be no such court as a county court, for the reason that the courts named absorb the whole judicial power, and that there is no residue of judicial power to be vested in a county court, and that all other courts are excluded by those named, by an application of the maxim, *expressio unius est exclusio alterius;* and in support of this proposition the case of *Ferris vs. Higley*, 20 Wallace, 375, is cited.

That was a case arising in the territory of Utah, and involved the single question whether or not the probate court had jurisdiction in that particular case. The organic act of that territory provided that,

"The judicial power of the Territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace."

A statute of the territorial legislature enacted that,

"The several probate courts, in their respective counties, have power to exercise original jurisdiction, both civil and criminal, and as well in chancery as at common law, when not prohibited by legislative enactment; and they shall be governed in all respects by the same general rules and regulations, as regards practice, as the district courts."

It was held that this act of the territorial legislature was in conflict with the organic act, and therefore, void. But no act of the legislative assembly of the Territory of Oklahoma is involved in this controversy, as all the provisions of the organic act emanated from Congress; and the power of Congress to enact the different provisions of the organic act of the Territory of Oklahoma, has not been, and cannot be, called in question.

But it is claimed that there is an irreconcilable conflict between the provisions of section *nine* and section *eleven*, in this, that section *nine* provides for a probate court, while section *eleven* provides for a county court; and that, in this instance, the provisions of section *nine* must control, as having been first agreed to by congress. If such conflict be conceded— and as to whether there is such a conflict or not we express no opinion—then the provisions of section *eleven* must control the provisions of section *nine*, so far as they are in conflict, as having been last agreed to by congress; and this is a rule of construction clearly stated in the authorities.

Mr. Sedgwick says: "So again it is said, if the latter part of a statute be repugnant to the former part thereof, it shall stand, and, so far as it is repugnant, be a repeal of the former part; because it was last agreed to by the makers of the statute, and this principle has been declared by the supreme court of New York. So in Pennsylvania it has been said, that, in cases of irreconcible repugnancy, the rule is to let the last part determine the intention of the law giver." ... (Stat., and Const., Constr., 353; . *Harrington v. Trustees*, 10

Wend. 547; *Packer v. Sunbury R. R. Co.*, 7 Harris, (Penn.) 211.)

As to the jurisdiction of the county court it is objected, that, as to all sums and matters in demand, which exceed one hundred dollars, by the provisions of the last paragraph of section *eleven* of the organic act, its jurisdiction is *absolutely unlimited*; and this fact is emphasised to show that congress did not intend to create such a court.

This objection arises from a misapprehension of the provisions of the law in relation to the jurisdiction of the county court. If there were no other provision than that contained in the last paragraph of section *eleven*, its jurisdiction as to all sums and matters in demand, in excess of one hundred dollars, would seem to be unlimited. But when the provisions of section sixteen of article six of the constitution of the state of Nebraska, and section two of chapter twenty of the compiled laws of that state, which are extended to and put in force in the Territory of Oklahoma, are considered, the jurisdiction of the county court will be found to be limited to the sum of one thousand dollars, exclusive of costs.

One other point has been urged, as bearing upon the intention of congress to create a county court, and that is, that no provision is made for a review of the judgments of the county court by appeal to the district court. An examination, however, of a few sections of the compiled laws of the state of Nebraska, which are in force in the Territory of Oklahoma, will disclose the fact that ample provision has been made for an appeal from the county court to the district court.

Section *two* of chapter *twenty* provides, that, "county judges, in their respective counties, shall have and exercise the ordinary powers and jurisdiction of a justice of the peace, and shall in civil cases have concurrent juris-

diction with the district court, in all civil cases, in any sum not exceeding one thousand dollars, exclusive of costs, and in actions of replevin, when the appraised value of the property does not exceed that sum; and the provisions of the code of civil procedure, relative to justices of the peace, shall, when no specific provision is made by this subdivision, apply to the proceedings in all civil actions prosecuted before said county court." And when we turn to the provisions of the civil code referred to, we find the following: "In all cases, not otherwise specifically provided for by law, either party may appeal from the final judgment of any justice of the peace to the district court of the county where the judgment was rendered;" and the following sections provide the time within which an undertaking must be filed, and the amount and conditions of such undertaking, and for the certifying and filing of a transcript of the proceedings in the district court.

We have no hesitancy in reaching the conclusion, that an appeal will lie from all judgments of the county court, in civil actions, to the district court of the Territory of Oklahoma, as that court, by the last paragraph of section *eleven* of the organic act, is given the same power and jurisdiction to enforce the laws of the state of Nebraska, which are extended to, and put in force in this Territory, that courts of like jurisdiction have in that state.

As the county court, therefore, has jurisdiction of the subject matter of the suit mentioned in the petition, the demurrer is sustained and the rule to show cause is discharged and the writ of prohibition is denied.

Writ of prohibition denied.

All the Justices concurring.