W. J. GARRETT, *as Receiver for Kotshonis Candy Company,*
v. LONDON & LANCASHIRE FIRE INSURANCE COMPANY.

(Filed February 11, 1905.)

1. **CHANCERY JURISDICTION—In Whom Vested.** By the organic act, all chancery power is vested in the district and supreme courts, respectively, and the probate courts do not possess, and cannot exercise, such powers.

2. **SAME—Appointment of Receivers.** The appointment of a receiver is the exercise of chancery power, and such power cannot be conferred upon, or exercised by, the probate courts.

(Syllabus by the Court.)

*Error from the Probate Court of Oklahoma County; before William P. Harper, Trial Judge.*

*Thompson & Caldwell,* for plaintiff in error.

*H. H. Howard,* for defendant in error.

Opinion of the court by

HAINER, J.: This is an action begun in the probate court of Oklahoma county by W. J. Garrett, as receiver for the Kotshonis Candy Company, against the London & Lancashire Fire Insurance Company, and others, as defendants, to recover upon a fire insurance policy, and to adjudicate the rights of the various defendants, as to their interests, and to determine the priorities of the respective claimants to the fund arising from said insurance policy.

The petition alleges that on the 13th day of August, 1904, the plaintiff, W. J. Garrett, was duly appointed by William P. Harper, probate judge of said county, receiver for the

Kotshonis Candy Company, and, as such receiver, was authorized to institute this action, for the recovery of the amount due on said policy. To this petition the defendant insurance company interposed a demurrer, on two grounds: (1) That the plaintiff had no legal capacity to sue, for the reason that such court had no power or jurisdiction to appoint such receiver; (2) that the petition does not state facts sufficient to constitute a cause of action. The court sustained the demurrer, for the reasons stated in the second ground thereof, to which ruling of the court the plaintiff excepted, and brings the case here for review.

But one question is presented by the record, and that is, whether the probate court in this Territory has the power and jurisdiction to appoint a receiver. Section 9 of the organic act provides as follows:

"That the judicial power of said Territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace.   *   *   *   The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of the justices of the peace, shall be as limited by law,   *   *   *.   And said supreme and district courts, respectively, shall possess chancery as well as common law jurisdiction."

It will thus be seen that the fundamental law of this Territory vests chancery power exclusively in the supreme and district courts, respectively, shall possess chancery as ferred upon the probate courts.

Section 9 of the organic act of the Territory of Utah contained this identical provision, but notwithstanding such provision in the organic law, the legislature of that Territory, in 1855, passed an act conferring chancery and common law jurisdiction upon the probate courts of the Territory; and

the supreme court of the United States, in *Ferris v. Higley,* 20 Wall. 375, in construing the validity of this act of the territorial legislature, held that the act of the territorial legislature, conferring upon the probate courts general jurisdiction in chancery and at law, was inconsistant with the organic act, and was therefore void.

In *Clayton v. Utah Territory,* 132 U. S., 632, this question was again before the supreme court of the United States, and Mr. Justice Miller, in discussing this question, uses the following language:

"The question of the conflict of a law passed by the legislature of Utah Territory with this same organic act is considered at some length in the case of *Ferris v. Higley,* 20 Wall. 375. The act of congress contains the provision that 'the judicial power of said Territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace;' and that 'the jurisdiction of the several courts herein p ovided for, both appellate and original, and that of the probate courts and of justices of the peace, shall be as limited by law. It was urged in that case that an act of the legislature of Utah was valid which conferred upon the probate courts of the Territory power to exercise original jurisdiction, both civil and criminal, as well in chancery as at commin law, when not prohibited by legislative enactment. This proposition was supported by a reference to the same clause of the organic act which is relied on in this case, namely, that the legislative power of the Territory extends to all rightful subjects of legislation consistent with the constitution of the United States and with that act. It became a question in that case, as in this, whether the law conferring this extraordinary power upon the probate court was consistent with the organic act which conferred the same powers upon the supreme and district courts of the Territory. That law was evidently intended to dispense with the jurisdiction of

the courts of the United States appointed by the President and Senate, as far as it could be done, by investing the probate courts, which were under the control of the legislature of the Territory, with the same powers which the former courts had.

"While there was no definition of the powers of probate courts in the organic act, this court held that the essential nature of probate courts was not such as to justify the conclusion that they were intended to exercise such powers, and especially it was held that it was not competent for the legislature to create other courts, or vest in other courts created by the organic act, powers which had already been vested in the district and supreme courts of the Territory, and that therefore the statute of the Territory conferring common law and equity jurisdiction on the probate courts was void, as being in conflict with that provision of the act of Congress."

These decisions are decisive of the case at bar. And it follows that under the fundamental law of this Territory, the probate courts do not possess, and cannot exercise, any chancery jurisdiction. It is elementary that the appointment of a receiver is the exercise of equitable jurisdiction. Nor has the legislature of this Territory the power to confer such jurisdiction upon the probate courts; and any act of the legislature attempting to confer such jurisdiction upon the probate courts would be inconsistent with the organic act, and therefore void. The probate court was without jurisdiction to appoint a receiver in this case and the acts of the court in reference thereto were unauthorized and void.

The judgment of the court below is therefore affirmed.

Beauchamp, J., absent; all the other Justices concurring.